| **Lorigo v Masullo** |
|:---:|
| 2024 NY Slip Op 30590(U) |
| February 27, 2024 |
| Supreme Court, Erie County |
| Docket Number: Index No. 807046/2023 |
| Judge: Dennis E. Ward |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

STATE OF NEW YORK
SUPREME COURT : COUNTY OF ERIE
_____

RALPH C. LORIGO,
CHARLES CASTIGLIA,

Index No. 807046/2023

Petitioners,

Decision and Order

vs.

MICHAEL MASULLO, BRAD J LOGALBO,
JANEL V DAVIDSON, STACY J LITTLEJOHN,
DAVID M HILBURGER, PATRICK A BEDNARZ,
KATHRYN E LEONE, BARBARA A HAMMOND,
THOMAS M HAMMOND, GINA M FINNERTY,
LOUIS B ALIQUO, ANTHONY CORSARO,
DUANE W WYGANT, ELISSA A GENCO,
EILEEN A MURPHY, LINDSAY A VANKOUGHNET,
KRISTIN M KACZMAREK, KIMBERLY A BOVO,
MICHAEL R MULZAC, JILLIAN M ALIQUO,
KEVIN L VANKOUGHNET, SUSAN M STEVENSON,
CHERYLL LACHOWSKI, THOMAS J FINNERTY,
AMY L NELSON, TAMRA E WIDMER,
MELANIA S BUCZKOWSKI, RYAN A KACZMAREK SR,
RICHARD A REINARD II, NORMAN R TOLSMA,
MICHAEL D STEVENSON, GARY W WIDMER,
LORI ARCARA, MICHAEL A ARCARA,
RICHARDJ BUCZKOWSKI, TERESA RIZZUTO,
KATHLEEN A HUBBARD, RAYMOND J SCHMIDT,
CYNTHIA C RIZZUTO, JOHANNA RENZO,
ANDREW M MCKEOWN, KATHLEEN A MCKEOWN,
NICHOLAS J LARSON, JOSHUA J WESTFALL,
KATHARINE E WATTIE, CHRISTINE M HANLEY,
JAMES BINGENHEIMER, TAMMY J SINCLAIR,
CHRISTOPHER P LARUSSO, KATHLEEN M MASULLO,
DAVID J HAMM SR, STACY BINGENHEIMER,
JENNIFER L ROBERTS, AMY B VALENTI,
BRIAN P VALENTI, JOHN P WEEKS,
NICOLE J MANGES, FRANK D WAGNER,

[*1]

1 of 17

**JILL M WAGNER, ROBERT E GENCO, VINCENT D BOVO, PETER J DELPRINCE, ANDREW MCKEOWN, LINDA M STRIANESE, EUGENE STRIANESE, FREDRIC M ZILLNER, JEFFERY E WATTIE, NICOLE M KEITH, ERIE COUNTY BOARD OF ELECTIONS, RALPH M MOHR, COMMISSIONER, JEREMY J ZELLNER, COMMISSIONER, NEW YORK STATE BOARD OF ELECTIONS, PETER S KOSINSKI, COMMISSIONER, DOUGLAS A KELLNER, COMMISSIONER, ANDREW J SPANO, COMMISSIONER, ANTHONY J CASALE, COMMISSIONER,**

Respondents.

---

## APPEARANCES

James M. Ostrowski, Esq.
Ralph C. Lorigo, Esq.
Attorneys for Petitioners

Joseph T. Burns, Esq.
Attorney for Respondent Michael Masullo

Jeremy C. Toth, Esq.
Erie County Attorney
Attorney for Respondent Erie County Board of Elections

Jeffrey T. Bochiechio, Esq.
Attorney for Respondent Conservative Party Members

Brian L. Quail, Esq.
Attorney for Respondent New York State Board of Elections

---

[*2]

## Background

This proceeding was commenced on June 8, 2023, under Election Law, Section 16-110(2), seeking the cancellation of the Conservative Party enrollment of the Respondent voters. (All statutory references are to the New York State Election Law unless otherwise noted). The return date of the order to show cause was for Thursday, June 15, 2023.

The Petitioners are Ralph C. Lorigo, chair of the Erie County Conservative Party committee, and Charles Castiglia, the chair of the Town of Evans Conservative Party committee.

The petition sought to have the court cancel the Conservative Party enrollment of seventy-five voters in the Town of Evans, because they were allegedly not in sympathy with the principles of the Conservative Party. They would thereby be prevented from voting in that party's primary election.

Certain interim relief, restraining the Respondent voters from voting in the primary and related to the Board of Elections conducting the 2023 primary election for the Conservative Party nomination for the Town of Evans supervisor was requested by the Petitioners. Due to the proximity to the primary election (early voting was scheduled to begin two days later, on Saturday, June 17, 2023) the court denied such relief. The matter was then scheduled for further proceedings to occur after the primary election day which was June 27, 2023.

After the primary day election and after the Board of Elections completed the canvass of votes in the Conservative Party primary for Town of Evans supervisor, the Petitioners filed a motion, under the same index number as the pending proceeding, seeking to have the court render certain relief, under Section 16-106, related to the canvassing of Conservative Party absentee ballots in that primary election race. The Court denied that request.

Thereafter, the court conducted a hearing over a number of days on the initial petition under Section 16-110. Testimony was heard, primarily from the two Petitioners - Mr. Lorigo as the county chair and Mr. Castiglia as the Evans town chair. Other testimony related primarily to the issues of the service of notices from the party meeting held on Saturday, May 27, 2023, at Petitioner Lorigo's law office in West Seneca, New York and the service of the court papers thereafter for this court proceeding.

Though given an opportunity to do so, the Respondents did not choose to call any witnesses on their behalf.

## Ruling On All Issues:

In cases involving proceedings under the Election Law, it is preferable for the trial court to address all issues raised. Even if the trial court's determination of one or more issues is dispositive of the matter, by ruling on all issues presented, it will allow for full

1

appellate review without delays and obviating a remand from the appellate court(s) if necessary. *Matter of Halloway v. Blakely*, 77 A.D.2d 932 (2nd Dept. 1980); *Matter of Fotopoulos v. Board of Elections of City of N.Y.*, 64 A.D.2d 878 (1st Dept. 1978, dissent of J. Silverman), *aff'd* 45 N.Y.2d 807 (1978); *Marsh v. Hale*, 63 Misc.3d 1236(A), *affd for reasons stated below*, 172 A.D.3d 1943 (4th Dept. 2019).

## No Proof of Service:

The court finds that for the following Respondent voters, there were no affidavits of service and no proof in the record that they were ever timely served. As such, regardless of whether they failed to appear with or without counsel, no order can be granted against them due to lack of jurisdiction over them by the court. Those Respondents are:

1. Stacey Bingenheimer
2. James Bingenheimer
3. Melania Buszkowski
4. Richard Buszkowski
5. Peter Delprince
6. David M. Hilburger
7. Nicole Manges
8. Kathleen Masullo
9. Richard Reinard, II
10. Cynthia Rizzuto
11. Tammy Sinclair
12. Eugene Strianese
13. Linda Strianese

Without an affidavit indicating proper service on a party, the petition against such party must be dismissed. *Matter of Brown v. Sanders*, 120 A.D.3d 676 (2nd Dept. 2014).

## Timeliness of Commencement:

This proceeding under Section 16-110(2) was commenced by the filing of the order to show cause and verified petition on Thursday, June 8, 2023, with a return date on Thursday, June 15, 2023. The primary election date was June 27, 2023, with early voting for such primary beginning on Saturday, June 17, 2023. Section 16-110(2) contains its own statute of limitations, requiring that any petition brought under that section be commenced at least ten days before the primary election.

The primary election is defined as one "at which enrolled members of a party may vote for the purpose of nominating party candidates and electing party officers." Section 1-104(9). An election proceeding is timely commenced against a named Respondent by the filing of the order to show cause and petition and by the completion of service upon all necessary parties.

Respondents have raised the issue of the timeliness of the proceeding. While the order to show cause and verified petition were filed on Thursday, June 8, 2023, service was not completed on the various respondents until Saturday, June 10, 2023, under the terms of the order to show cause.

Notwithstanding the service provision of the order to show cause, the court may not extend the statute of limitations in an Election Law proceeding. *Matter of Davis v.*

2

[*4]

*McIntyre*, 43 A.D.3d 636 (4th Dept. 2007); *Matter of Hennessey v. DiCarlo*, 21 A.D.3d 505 (2nd Dept. 2005), *lv denied.*, 5 N.Y.3d 706 (2005); *Matter of Marino v. Orange County Board of Elections*, 307 A.D.2d 1011 (2nd Dept. 2003).

Respondents argue that the "primary election" actually begins on the first day of early voting, since that is when enrolled voters of the Conservative Party could first vote on the party nominees for the various public offices. The Petitioners argue that the statute means that the primary election is held on what has always been referred to as "primary day" - meaning the single date of Tuesday June 27, 2023.

It should be noted that Section 16-110 does not state the operative date as being "primary day". Rather, the language used is "primary election". Before the enactment of early voting, the two were one and the same. (*See generally*, Section 8-600). With early voting now permitting voters to cast their ballots ten days before the traditional "primary day", the novel question presented is whether that change now requires the statute of limitations to be measured from the date when early voting commences. That would mean on the second Saturday and ten days before the Tuesday primary election "day", when such voting begins.

The present case illustrates the problems which arise if the measurement of the ten days is now made from the single primary election date (currently the last Tuesday in June). *See, Section 8-100(1)*. Using the single Tuesday date as the point of measurement, such a proceeding could theoretically have been commenced by June 17, 2023 - the day of the start of early voting. By the time the matter could be heard, the return date would be well after early voting was already taking place.

This case actually saw the court faced with the request of relief to direct the Board of Elections to adjust the voter lists of the eligible Conservative Party primary voters two days before voting was to begin. Early voting permits voters to use any polling location county wide. Section 8-600(3). Voter data at every polling site (in Erie County, that is at least forty different locations) would need to be changed even though the relief was only requested for Conservative Party voters in the Town of Evans.

The intent of the statute was clearly to give the Board of Elections sufficient time to adjust the information regarding party enrollment of challenged voters at all poll sites, as well as at the central Board of Elections before such primary voting begins. This court noted this when denying the immediate relief sought by the Petitioners on the return date two days before early voting began. The court notes the affidavit of Justin Rooney, the office manager of the Erie County Board of Elections, for the burden such a late direction from the court would put on the Board's primary election work.

It follows logically that the statute should be interpreted to now require such a proceeding to be commenced ten days before the beginning of early voting. This would mean that for the present case, the commencement would have been timely if service were properly made by Wednesday, June 7, 2023. For that reason, the proceeding to cancel the Conservative Party enrollment of the Respondent voters was therefore

3

[*5]

untimely as a matter of law under Section 16-110. For any such proceeding, the court is therefore without jurisdiction to render the relief sought. *Matter of Brandt v York*, 68 N.Y.2d. 889 (1986). For that reason alone, this entire proceeding must be dismissed.

## Petitioners Are Guilty of Laches:

Additionally, the Petitioners were, in any event, guilty of laches for applying for such a remedy so close to the primary election. In such election matters, it is sometimes impossible for a court to render meaningful relief due to the shortness of time, even if the claims were valid. *Matter of Hunter v. Orange County Bd. of Elections*, 11 N.Y.3d 813 (2008). *See also, Matter of King v. Board of Elections in City of N.Y.*, 65 A.D.3d 1060 (2nd Dept. 2009); *Matter of Pidot v. Macedo*, 141 A.D.3d 680 (2nd Dept. 2016).

## Due Diligence for Service by Affixing:

The service provisions of this court's order to show cause, by which the Petitioners commenced the 16-110(2) proceeding, allowed service of the papers upon the Respondent voters by:

1. personal delivery; or,
2. leaving a copy with a person of suitable age and discretion at the voter's voting address; or,
3. if one attempt at (2) is unsuccessful, by affixing a copy to a door of their voting residence.

In attempting to effect service before the June 10, 2023, 9:00 P.M. deadline, a number of the individuals serving the papers apparently used the third alternative form of service by simply going (once) to the voter's residence and, if no one answered the door, simply affixing a copy to the door.

In fashioning the acceptable methods of permissible service in an Election Law proceeding, a court must provide for a method which is reasonably calculated to give notice to the party being served within the applicable statute of limitations. *Matter of Contessa v. McCarthy*, 40 N.Y.2d 890 (1976).

The first and second provisions of the order to show cause clearly met such a purpose. The third alternative was to be used in the event the first or second could not be accomplished. It was itself a significant variation from the traditional "due diligence" standard which has always been required when such substituted service is made under CPLR 308.

The general rule has always been that the individual effecting service would exercise "due diligence" by first attempting personal service or so-called "leave and mail" service on a person of suitable age and discretion at the party's residence. Generally, "due diligence" requires three attempts at one of the first two alternative methods. And such attempts must be spaced apart and designed to be at different

4

times and perhaps different days. Only then, on the fourth attempt should the "affix" alternative be used.

Due to the exigencies of time in the present case, the court first dispensed with the need for any mailing to the Respondents. The court did also curtail the exercise of due diligence considerably - but it did not eliminate it completely.

Rather, it allowed for one attempt at personal service or leaving with a person of suitable age and discretion, to suffice before permitting the server to resort to the affix alternative. It simply meant that if one attempt at either of the first two alternatives was made and failed, that the server could on a second attempt affix the papers to the door.

The Petitioners' servers followed up the filing of their initial service affidavits on the various Respondents with a supplement to their affidavits of service. Each one explains that, under their interpretation of the third alternative service provision, in a single trip to any given Respondent's residence, they attempted to effect service either personally or upon a person of suitable age and discretion. Failing to accomplish either, and without leaving and returning to the premises later, they simply affixed the papers to the voter's door.

The wording of the service provision in the order to show cause clearly contemplated a second attempt, before the affixing to the door would suffice. Had the interpretation given by the Petitioners been as they read it, the provision would not have used the phrase "if one attempt at method two is unsuccessful." Rather, it would simply have stated the use of affixing to the door as a third option which could be used with a single attempt and without reference to a failure at either of the first two alternatives. The order clearly contemplated the due diligence of at least one attempt before the use of the third (affixing) alternative. In the absence of some showing of "due diligence" to accomplish either personal service or the leaving of papers with a person of suitable age and discretion, such service by affixing is inadequate to give the court jurisdiction. *Matter of McGreevy v. Simon*, 220 A.D.2d 713 (2nd Dept. 1995); *Matter of Hennessey v. DiCarlo*, 21 A.D.3d 505 (2nd Dept. 2005).

For that reason, the service upon all the Respondents which was accomplished simply by affixing the papers to the door on the first attempt, was invalid. The failure to strictly comply with the service provisions of the order to show cause is fatal to the commencement of an Election Law proceeding - at least as to those Respondents served in such manner. *Matter of Flynn v. Orsini*, 286 A.D.2d 568 (4th Dept. 2001); *Matter of Streng v. Westchester County Board of Elections*, 131 A.D.3d 652 (2nd Dept. 2015).

Were the court to reach the issue of the ineffective substituted service, by simply affixing the papers to the door of each Respondent voter, the proceeding would be found not to have been properly commenced against the following Respondents:

5

1. Jilliann Aliquo
2. Lori Arcara
3. Michael Arcara
4. Anthony Corsaro
5. Janel Davidson
6. Thomas Finnerty
7. Elissa Genco
8. Robert Genco
9. David Hamm
10. Cheryl Lachowski
11. Nicholas Larson
12. Christopher LaRusso
13. Kathryn Leone
14. Stacey Littlejohn
15. Brad LoGalbo
16. Michael Masullo
17. Andrew McKeown
18. Kathleen McKeown
19. Michael Mulzac
20. Eileen Murphy
21. Teresa Rizzuto
22. Jennifer Roberts
23. Michael Stevenson
24. Susan Stevenson
25. Amy Valenti
26. Brian Valenti
27. John Weeks
28. Gary Widmer
29. Tamra Widmer
30. Duane Wygant
31. Frederic Zillner

As for those Respondents, the proceeding is dismissed on the additional basis of improper service, which leaves the court without jurisdiction to grant any of the requested relief.

## Specificity of Pleadings:

Contrary to the Respondents' argument, the allegations as framed in the initial verified petition, are more than adequate to put them on notice of what the bases were for the requested relief of the cancellation of their Conservative Party enrollment. *Cf. Matter of Hennessy v. Oneida County Bd. of Elections*, 217 A.D.3d 1452 (4th Dept. 2023).

## Newly Registered Voters:

There were three Respondents who were apparently new registrants, not having been previously registered or enrolled in a political party. (*See*, Petitioners' exhibit 4, spreadsheet). Here, an individual who was not yet even a registered voter selected the Conservative Party affiliation.

By the logic of the Petitioners, when such a new voter is suspected of being associated with the wrong candidate, they could use the Section 16-110(2) remedy to allow them to be included on the list of those being notified to appear at such a party meeting to defend their political sympathies.

Whatever might be said or determined about existing voters who change their enrollment as part of a larger group effort, it can hardly be "just" to cancel the enrollment of a new voter (and new party enrollee). To subject a newly registered voter to such an inquiry, including having to appear before a party committee to defend oneself, is outrageous on its face and an unwarranted intrusion upon such a voter's free speech

6

[*8]

and the right to vote. It is hard to envision any set of circumstances under which a new voter would immediately be subject to expulsion for what a party chair or his political party committee believes are that voter's sympathies. Certainly, the Petitioners have not met their burden that such relief would be "just". The court denies such relief for these three voters on that ground alone. Those Respondents are Vincent Bovo, Norman Tolsma and Andrew M. McKeown.

## Constitutionality of Section 16-110(2):

A challenge to the constitutionality of Section 16-110(2) was alleged by the Respondents although no significant argument or proof was submitted as to that claim. It does not appear that the office of the New York State Attorney General had been put on notice as required by Executive Law, Section 71. Alternatively, the Respondents suggested that the statute, by the relief requested, was unconstitutional, as applied in this case.

Under the facts of this case, this court need not address such a drastic remedy. The issues that the Respondents have with how their rights have been affected can be addressed in the trial court's broad authority to approve the county chair's request for the cancellation of their Conservative Party enrollment. The court may consider whether the requested cancellation of enrollment has an impact on any of the constitutional rights of the Respondent, in determining whether such action is "just". *See, Matter of Rivera v. Espada,* 98 N.Y.2d 422 (2002).

## Parties Appearing in Person:

On the return date of the order to show cause, in addition to counsel for the various parties, two unrepresented Respondent voters appeared: Melania Buczkowski and Cynthia Rizzuto. Because of the anticipated length of the proceeding, they were excused, subject to being notified to return if necessary. The court advised them that their presence on the initial return date would be treated as their "appearance" notwithstanding that no formal answering papers had been submitted on their behalf.

It was subsequently determined that no affidavits of service of papers had been filed or presented to the court for either of those two individuals. As a result, with no jurisdiction acquired over them before the expiration of the statute of limitations, the proceeding as to both is dismissed.

Two other parties who had likewise appeared in person (Richard Buczkowski and Jeffrey Wattie) were represented by Mr. Bochiechio. The proceeding as to Mr. Buczkowski was also dismissed for the failure to file or have presented to the court an affidavit of service. As for Jeffrey Wattie, although an affidavit of service was filed, it contained no date of service. The proceeding against him is therefore dismissed for a failure to acquire jurisdiction.

7

## Effect of the *Mazzullo v. Barnett* Decision:

The Petitioners understandably rely upon the decision of the Appellate Division, Fourth Department in *Matter of Mazzullo v. Barnett*, 207 A.D.3d 1140 (4th Dept. 2022), *lv. denied*, 39 N.Y.3d 905 (2023), which affirmed the written decision of Supreme Court, Monroe County (J. Doyle), where the requested cancellation of enrollments was granted. Respondents argue that the outcome in that case does not mandate granting the relief of the cancellation of party enrollment as requested by the Petitioners in the present case. For the reasons stated below, were the court to reach that issue, the court agrees with the Respondents.

Section 16-110(2) vests the trial court with broad authority to approve or disapprove the cancellation of the enrollment of voters who are deemed not to be in sympathy with the principles of a political party. The court must evaluate the entire fact pattern and determine whether the very consequential action of cancelling a voter's choice of a political party with which to associate and to participate with, is just.

The "just" standard is by its very nature a subjective determination. The Appellate Division's affirmance of the trial court's decision held that the factors articulated, and the facts presented in that case supported a finding that the requested cancellation of party enrollments was "just". The facts of the Mazzullo case vary considerably from those present in this case.

## Candidate's Recent Change of Enrollment:

The Petitioners note that the Respondent candidate in the present case, Michael Masullo, recently changed his party enrollment from the Democratic Party to the Conservative Party, in the months leading up to the 2023 election cycle. They argue that this is one of the indices of his being out of sympathy with the beliefs of the Conservative Party.

The same Fourth Department noted in a case decided after the *Mazzullo* case, that there are two options open to a non-party candidate who is seeking the nomination of another party in its primary election. *See, Matter of Kowal v. Mohr*, 216 A.D.3d 1472 (4th Dept. 2023).

The court noted that first, such a non-party candidate can obtain a party authorization - the so-called Wilson-Pakula certificate - under Section 6-120. This, of course, requires the acquiescence of the political party, which chooses who may or may not be given one.

But the court also noted the second option available to a candidate to break into the other political party's closed primary is "by changing his/her party enrollment prior to the statutory deadline", citing Section 5-304(3). The court determined that this other option for a candidate - to change party enrollment before the deadline imposed by Section 5-304(3) - is what helps sustain the constitutionality of another section of the

[*10]

law (Section 8-308[4]), as amended by L. 2021, Chapter 480, Sections 3), which now prohibits the Board of Elections from counting the votes of an enrolled party voter for a non-party member candidate by the "write-in" method. The recent enactment of the shorter cutoff date for enrollment changes (Section 5-304[3]) permitted a change of the Respondent's party enrollment up to February 14, 2023.

This court takes judicial notice of numerous changes of party enrollment by candidates throughout Erie County in the 2023 election year, thereby permitting such candidates to run in another party primary without that party's authorization. Not without a measure of irony, one of those candidates was the daughter-in-law of the Petitioner party chair Mr. Lorigo, who was a (thereafter successful) candidate for the Erie County Legislature, Tenth District. She had previously been an enrolled Conservative Party member, who then re-enrolled in the Republican Party in order to participate in that party's primary. Her primary election opponent, previously a member of the Republican Party, re-enrolled in the Conservative Party to similarly participate in that primary as well. The result was that each candidate was able to participate in both parties' primary elections since they each obtained an authorization from their former political party. There is nothing improper about any of those actions, as they are perfectly legal under the statute, as amended. But given the participation and acquiescence in such action by party chair Lorigo and the Erie County Conservative Party, it is difficult to judge the Respondent candidate Masullo's same course of action in the Town of Evans as objectionable.

In a proceeding where this court is being asked to determine the request for cancellation of enrollments as "just", the Petitioner party chair seeks to use a different standard than for a family member originally enrolled in the Conservative Party. Similar to equitable estoppel, it is difficult to square this with the county chair's assertion of the Masullo candidacy as being not in sympathy with the Conservative Party's principles and as being "just" to strip this Respondent candidate and his supporters of their Conservative Party enrollment. Noting the caution of the Appellate Division, First Department in weighing the possible bias of an incumbent party chair in such matters, this is a heavy consideration in this court's determination that such request is not "just". *Matter of Rivera v. Espada*, 3 A.D.3d 398 (1st Dept. 2004).

This case involves a single candidate (and his supporters) using the new, easier legislatively approved enrollment change procedure. That is different than the *Mazzullo* case where the trial court noted the presence of committee members and candidates from the "(Town of) Rush Democrat [*sic*] Committee". The heavy influence of an existing party in a takeover of another party can be a justification for relief under Section 16-110(2). *See, Matter of Farrell v. Morrissey*, 32 A.D.3d 1362 (4th Dept. 2006).

## Voters' Recent Change of Enrollment:

The other Respondent voters also exercised their constitutional and statutory rights to change their party enrollment. There is no evidence that there was any plan or

attempt to supplant the party structure of the Conservative Party in the Town of Evans during the year 2023. Nor was there any evidence that another political party was hijacking the Conservative Party structure. While one notary, who helped gather about half of the affidavits submitted to the party meeting, was a member of the Republican Party, it's not unusual for a supporter of the endorsed Republican candidate to have Republicans working for him.

The *Kowal* decision addressed the "stringent standard of review" for the impact of a statute on the constitutional rights of voters, noting a lower standard for that of candidates. Where a statute's primary impact is on a candidate (as were the changes to Section 8-308[4]), that merits lower scrutiny than protecting the exercise of a voter's right to register, enroll and vote. Here, the issue of the individual voters' right to enroll and participate in the Conservative Party's primary deserves that higher measure of scrutiny. While the constitutionality of the statute is not at issue, how it is applied is certainly a factor to be weighed in the court's decision as to whether the requested cancellation of the voters' enrollment is "just".

Petitioners' own exhibit 4 (a spreadsheet of the new Conservative Party voters in the Town of Evans) shows voters changing from both major parties, from the unaffiliated status, as well as the inclusion of three new voters who were previously unregistered.

Without solid proof of an attempted takeover of the party itself by another political party (presumably, the Republican Party here) and with the other facts of this case, to cancel the enrollment of the Respondent voters would be an unjust abridgement of their rights of association and free speech and ultimately their right to vote.

While Section 16-110(2) grants the party chair the right to maintain the integrity of the party, such chair does not have unfettered control over candidates or voters. As the First Department Appellate Division noted in *Matter of Rivera v. Espada* (3 A.D.3d 398) (decision on remittitur), the court must guard against the possible overreach or bias of an incumbent party chair.

## Comparison to the *Mazzullo* Case:

While the Petitioners note similarities between this case and the *Mazzullo* case, there are actually considerable differences. *Mazzullo* was commenced approximately twenty-four days before the first day of early voting in 2021. In the present case, the date of the commencement was June 8, 2023, only nine days before early voting began.

*Mazzullo* involved the Respondents' use of the designating petition process for a number of candidates for the Conservative Party nomination for public offices in the Town of Rush, in Monroe County. The trial court noted that for both the petitions and the affidavits submitted, "notary publics [*sic*]" included "members of the Town of Rush Democrat [*sic*] party". Indeed, the trial court noted that one "public notary [*sic*]" was "a committee member of the Democrat [*sic*] Party."

10

[*12]

In addition, the cover sheet for the Respondents' designating petitions included as the agent to be notified by the Board of Elections, the "Chair of the Town of Rush Democrat [*sic*] Committee".

Also, of the fifteen affidavits submitted by the Respondent voters (in lieu of appearing at the party hearing) thirteen of them were notarized by an individual who was a member of the "Monroe County Democrat [*sic*] Committee" and whose spouse was "a Democrat [*sic*] elected official in the Town of Rush," and one of the candidates seeking the Conservative Party nomination. Only two of the affidavits that were submitted were "notarized by different Notary Publics [*sic*]."

On Friday, April 30, 2021, the chair had sent out the notice of the meeting to be held on May 12, 2021, which was a weeknight (Thursday). The location was in a fire hall where there was presumably sufficient space for such a group of no more than twenty-one voters. It appears the meeting location was likely no more than eight miles from most of the Town of Rush Respondent voters with an estimated travel time of ten to fifteen minutes.

Finally, though affidavits were submitted at the May 12, 2021 meeting, none of the voters appeared nor did any attorneys appear on their behalf.

By comparison, the meeting called by chair Lorigo for sixty-seven voters illustrates considerable differences. The meeting was to be held in a professional law office in a commercial office building. The notice for the meeting was sent by U.S. Postal Service regular mail on Saturday May 20, 2023. (Judicial notice can be taken that such first class mail is sent to Rochester for the eventual distribution back to the Buffalo area). While the Petitioners' witness claimed it was delivered on Monday, that is highly doubtful – all for a meeting to be held later in the same week, on Saturday, May 27, 2023 – on the Memorial Day holiday weekend.

It should be noted that the location of the Lorigo law office in the Town of West Seneca, New York is over twenty miles from most of the Respondent voters' residences in the Town of Evans. The likely one-way drive time would be at least twenty-five minutes. (There was never any discussion as to why a meeting of such considerable local importance wasn't held in the subject Town of Evans - perhaps at a fire hall there as was done in *Mazzullo*).

While none of the Respondents appeared at the Lorigo law office, two attorneys did appear on their behalf, along with the delivery of the affidavits submitted by the parties. Although they were form affidavits, likely prepared by some counsel, they all stated, among other things, the critical standard out of the statute, that they were in sympathy with the principles of the Conservative Party.

The *Mazzullo* case had an element of default on the part of the Respondent voters as none of them appeared nor did counsel appear on their behalf – just the delivery of affidavits. The same was not present in this case. The appearance of

11

counsel on behalf of the Respondent voters with argument on behalf of the clients being made as to the unfairness of the proceeding, is much different.

One matter that needs to be addressed is the Petitioners' claims concerning the political affiliation of and prior (Republican) party representation by the two attorneys (Mr. Bochiechio and Mr. Burns) who represented the various Conservative Party Respondents. Petitioners even went so far as to submit biographical information highlighting the Republican Party "credentials" of both counsel.

Knowledge of the highly technical requirements of Election Law litigation is a very narrow specialty. Few attorneys can combine the knowledge of the nuances of the Election Law with the speed with which answering papers and adequate advocacy must be rendered in a very compact time frame.

It is true that attorneys in that field usually represent their own political parties and their candidates. But that is because most election law litigation is between the two major parties or their candidates. However, the retention of an attorney by any litigant who happens to be associated with or a member of another party has no bearing on the question of party raiding or the sympathy with party principles by the political party member. To do so is a dangerous attack on the cherished freedom of clients to have a skilled attorney of their own choosing to represent them. The possibilities of laying the attorney's personal political beliefs and associations on the voter is a dangerous path to go down.

Certainly, the involvement of members, officers and elected officials of another party such as was present in the *Mazzullo* case, can be a relevant factor to be considered in a proceeding brought under Section 16-110. However, this court rejects outright any claim that an attorney for any voters will have their own political party identification considered as a detrimental factor against the client whose political sympathies are in question.

The court therefore finds that the circumstances surrounding the Petitioners' use of the relief available under Section 16-110 clearly show that the procedure used and the result thereof, seeking the cancellation of the Conservative Party enrollment of the Respondent candidate Masullo and the other Respondent voters was not just, within the meaning of that statute.

For that reason, the petition requesting the cancellation of the Respondent voters' enrollment in the Conservative Party in the Town of Evans is therefore denied.

## Failure to Oppose the Petition:

A number of the Respondents did not evince enough interest in the Conservative Party meeting to either appear at such meeting, to communicate with the Petitioner Chairman Lorigo or to submit even the form affidavit opposing the questioning of their party loyalty or sympathies.

12

[*14]

Those Respondents were:

1. Andrew M. McKeown
2. John P. Weeks
3. Frank D. Wagner
4. Robert E. Genco

5. Vincent D. Bovo
6. Frederic M. Zillner
7. Nicole M. Keith

All of these Respondents did appear by counsel (Mr. Bochiechio) and therefore are the beneficiaries of counsel's motions against the petition for the various procedural reasons addressed above. For that reason, the petition against them is dismissed.

However, were the court to address the substantive issue of whether the determination of the Petitioner Lorigo at the meeting was just and whether it should be upheld by this court, because of their failure to participate in any way with the meeting, the court would grant the petition as to them, even though a different conclusion is reached on the just standard for the remaining Respondents who had conveyed their objection to the process.

These individuals did not exhaust their remedies by conveying their opposition to the cancellation of their enrollment to the party chair. They cannot be heard to complain that the party's procedure, as permitted by statute, was not "just" when they didn't even participate. For this group of Respondent voters, the court would grant the motion to cancel their Conservative Party enrollment due to their waiver of any claim of an unjust determination.

## Motion Requesting Invalidation of Absentee Ballots:

This court denied the Petitioners' requested relief for the immediate cancellation of the voters' enrollment two days before early voting began, due to the lateness of the request for relief. In the primary election, the Respondent candidate Masullo won the Conservative Party nomination, over the Conservative Party endorsed candidate, Raymond Ashton.

After the primary election, when the votes had been canvassed by the Board of Elections, the Petitioners sought to amend the pleadings in this proceeding by a motion under the same index number, with a request for additional relief under Section 16-106, asking the court to disallow a certain number of absentee ballots that the Board of Elections has already counted.

Petitioner made a purely mathematical calculation - comparing the number of absentee votes cast and the number who voted for Respondent Masullo as compared to the absentee ballot applications and in particular those from among the Respondents who had voted by absentee.

The Petitioners correctly calculate that if they were successful in their request to invalidate all of the Conservative Party voters' enrollments at issue, by a simple process of elimination, the Respondent Masullo's margin of victory (two votes) would have been

13

eliminated, due to the number of votes that Masullo received from absentee ballots. As a result, candidate Ashton would have been the winner. However, given the various rulings by the court, the cancellations have been denied.

## Request for Additional Relief:

Petitioners requested that since the Section 16-11092) proceeding was still pending before the court, and all the parties to it were already subject to the jurisdiction of the court, and awaiting a hearing, they simply filed a motion to add an additional cause of action to invalidate a sufficient number of the absentee ballots from the Board of Elections canvass - and thus, overturn the primary election results. The net effect of the requested court order would be to overturn the canvass of the Board of Elections by declaring the opposing candidate, Raymond Ashton, the winner of the nomination in place of the Respondent candidate Masullo. For the reasons stated below, that relief was in all respects denied.

## Section 16-110(2) Special Proceeding:

This case, which was still pending, was commenced under Section 16-110 as a special proceeding governed by CPLR, Article 4. See also, Section 16-116. Under the very restrictive rules governing special proceedings, no new parties or causes of action are permitted except by leave of the court. *See generally* CPLR sections 401 and 402; *Matter of Alessio v. Carey*, 49 A.D.3d 1147 (4th Dept. 2008), *lv denied*, 10 N.Y.3d 803.

The Petitioners' motion sought to have the court address an entirely new cause of action - that being relief to be granted under Section 16-106, reviewing the canvass of ballots by the Board of Elections. Such a request for relief may not "piggyback" on a pending (different) special proceeding, even if it is one brought under Article 16 of the Election Law. This is subject to the same prohibition on the commencing of a cross-petition or adding new parties in such a special proceeding. Only by requesting leave of the court first may such a new cause of action be instituted within the same proceeding. *Matter of Zenosky v. Graziani*, 288 A.D.2d 843 (4th Dept. 2001); *Matter of White v. Bilal*, 21 A.D.3d 573 (2nd Dept. 2005).

In effect, such a request for relief is an entirely separate proceeding, with the same requirements for a separate verified petition. Section 16-116. Likewise, such a different proceeding must be commenced by order to show cause. *Matter of Wallace v. Bujanow*, 176 A.D.3d 1307 (3rd Dept. 2019).

## Necessary Party Not Before Court:

The Petitioners' rationale for the requested additional relief under Section 16-106 was that all the same parties were already before the court and thus had received appropriate notice with the opportunity to be heard.

Even assuming the need for notice by order to show cause could be dispensed with, one very interested party was not before the court - the opposing candidate in the

**14**

Conservative Party's primary for town supervisor, Raymond Ashton. He was the Democratic Party candidate and endorsed and authorized Conservative Party candidate, who was not a named or appearing party to the first proceeding under Section 16-110(2)..

The absence of a necessary party from a special proceeding under Article 16 of the Election Law, after the expiration of the statute of limitations, renders the proceeding a nullity. *Matter of Marin v. Board of Elections of the State of New York*, 67 N.Y.2d 634 (1986); *Matter of Sahler v. Callahan*, 92 A.D.2d 976 (3rd Dept. 1983).

In this case, no timely request for the joinder of candidate Ashton as an additional party was made, as required by CPLR section 401. Even if a request had been made, no such relief for joinder of a new party under CPLR 1003 is available once the statute of limitations has expired.

In a challenge to ballots and the canvass of them by the Board of Elections, each of the candidates is a necessary party since their interest could be inequitably affected by the result. Therefore, the failure to have named and served the opposing candidate Ashton in the challenged election is the omission of a necessary party and thus requires the denial of the request to overturn the canvass of the Board of Elections.

## Court Lacked Authority to Invalidate Absentee Ballots:

The new Section 9-209, as amended in 2021 by the State Legislature, now restricts the court's ability to invalidate absentee ballots which the Board of Elections has already counted. Only ballots not counted by the Board of Elections are subject to the court's authority to direct the counting of such a ballot. Thus, the court lacked the authority under the statute as amended to grant the relief requested by the Petitioners. *Matter of Amedure v. State of New York*, 210 A.D.3d 1134 (3rd Dept. 2022).

## Conclusion:

For the reasons stated, the relief requested by the Petitioners for the cancellation of the Conservative Party enrollment of all the Respondent voters, including that of candidate Masullo, is denied and the petition is therefore dismissed.

As for the relief requested in the motion seeking to have the court invalidate certain absentee ballots cast in the 2023 primary election and counted by the Erie County Board of Elections, that motion is likewise denied.

This decision shall constitute the order of the court.

February 27, 2024

Dennis E. Ward, J.S.C.

15